UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
BRIDGET ESTREMERA,
            Plaintiff,

v.                                          **OPINION AND ORDER**

CITY OF BEACON, JASON WALDEN,      23 CV 2294 (VB)
RYAN SAMBELLS, and ROBERT SELLICK,
            Defendants.
--------------------------------------------------------------x

Briccetti, J:

      Plaintiff Bridget Estremera brings this Section 1983 action against defendants the City of Beacon and Beacon police officers Jason Walden, Ryan Sambells, and Robert Sellick. Plaintiff alleges defendants violated her Fourth and Fourteenth Amendment rights when they arrested and detained her following a domestic dispute.

      Now pending is defendants' motion to dismiss plaintiff's claim against the City of Beacon, pursuant to Rule 12(b)(6).[1] (Doc. #27).

      For the reasons set forth below, the motion is GRANTED.

      The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

## BACKGROUND

      For the purpose of ruling on the motion to dismiss, the Court accepts as true all well-pleaded factual allegations in the amended complaint, and draws all reasonable inferences in plaintiff's favor, as summarized below.

---

[1] Defendants initially moved to dismiss claims against both the City and defendant Sellick. However, they subsequently withdrew their motion as to Sellick after Sellick was properly served. (Doc. #34).

1

I.      Plaintiff's Arrest

On April 30, 2020, plaintiff alleges she was visiting with a friend, Jose Tejada, at her residence in Beacon, New York.  Tejada is also the father of one of plaintiff's biological children.  According to plaintiff, she and Tejada consumed alcohol, and she eventually became inebriated.  Plaintiff alleges "[t]he two exchanged hurtful comments, and plaintiff became upset and began acting out."  (Doc. #26 ("Am Compl.") ¶ 13).

Tejada called the police, and defendant Walden responded to plaintiff's residence.  Walden allegedly found plaintiff and Tejada "just outside plaintiff's apartment at the top of a flight of stairs."  (Am. Compl. ¶ 16).  Plaintiff acknowledges she was "slapping at Tejada" when Walden arrived, but she alleges she did not "pos[e] any serious threat of harm, and Tejada did not then fear any serious physical harm."  (Id. ¶ 15).  Plaintiff asserts Walden similarly did not and could not have reasonably believed "plaintiff was then capable of causing Tejada serious physical injury."  (Id. ¶ 20).

Plaintiff alleges Walden nevertheless "charged up the stairs" toward her "in an aggressive manner and tackled her to the ground."  (Am. Compl. ¶ 21).  According to plaintiff, she was shocked and confused by Walden's behavior and, in "her intoxicated state," she "flailed and struggled as Walden was on top of her."  (Id. ¶ 22).  But plaintiff contends she never struck or intended to strike Walden, and he was able to "subdue[]" her and take her into custody.  (Id. ¶ 24).  Plaintiff alleges Walden was aware at the time there were other officers on their way to

2

assist him.  However, allegedly "without any need or justification," Walden punched plaintiff in the face at least twice and "struck her arms and body with his fists."  (Id. ¶ 26).

Shortly after Walden struck plaintiff, defendant Sambells and another police officer (Ingram) arrived on the scene, handcuffed plaintiff, and brought her to police headquarters in a patrol car.

II.     Plaintiff's Detention

When she arrived at the police station, plaintiff allegedly was still "upset about how she was being treated."  (Am. Compl. ¶ 31).  According to plaintiff, Sambells failed to de-escalate the situation—instead, he falsely claimed plaintiff was "purposefully spitting blood," and placed a "spit hood" over her head as he removed plaintiff from the patrol car.  (Id. ¶ 32).  Plaintiff alleges defendants Sambells and Sellick were then forceful and aggressive in transporting her from the patrol car into the station, causing her pain.  Specifically, plaintiff contends the officers "aggressively yanked and dragged" her, "applied undue pressure" against her neck while pulling on the spit hood, pinned plaintiff against the wall in an elevator car, and "wrenched on" her arms. (Id. ¶¶ 34–40).

Once in a booking room, Sambells and Sellick allegedly chained plaintiff to the wall while both of her arms were cuffed behind her back and the spit hood remained on her head. Plaintiff alleges the officers left her in this position for approximately two-and-a-half hours, resulting in significant pain and discomfort.  According to plaintiff, the spit hood and handcuffs were then removed, and she was "re-chained to the wall by one arm."  (Am. Compl. ¶ 48). Plaintiff alleges she was left chained this way and seated on a bench in the station for an additional ten hours, "or nearly thirteen hours cumulatively."  (Id. ¶ 49).  Plaintiff was allegedly

3

transported to Dutchess County Jail "later in the afternoon of May 1, 2022,"[2] where she was seen by a medical professional. (Id. ¶ 50).

Plaintiff acknowledges that during the time she was detained at the police station, she was "intoxicated and verbally expressing her displeasure at the manner in which she was being treated." (Am. Compl. ¶ 42). However, she alleges she was not physically threatening and she did not otherwise "act[] in a manner justifying" Sambells and Sellick using a spit hood, forcefully "manhandling" her, "yanking and dragging" her, or chaining her in painful positions for an extended period of time. (See id. ¶¶ 42–44).

III.   City of Beacon's Use of Force History

As relevant to the instant motion, plaintiff alleges Beacon police officers are often called to respond to incidents of domestic disputes and frequently use force on such occasions. Plaintiff asserts in the twenty-eight months prior to her arrest, Beacon officers used force during forty-four civilian encounters, and "seventeen of those instances involved a subject who was either involved in a domestic dispute, intoxicated, emotionally disturbed and/or exhibiting symptoms of mental illness." (Am. Compl. ¶ 76). Further, in the ten years preceding plaintiff's arrest, there were allegedly seven lawsuits filed claiming excessive force by Beacon police officers, including Walden and Sellick. Plaintiff alleges this pattern, combined with the specific circumstances of her own encounter with Beacon police, evidence the City's "lack of training and supervision" of police officers. (Id. ¶¶ 80–81).

Plaintiff also alleges defendants "Walden and Sambells, acting in their supervisory capacities, reviewed several of the afore-cited use of force reports, clearing them as appropriate."

---

[2]   Because the amended complaint alleges plaintiff was arrested on the evening of April 30, 2020, the Court assumes the reference to her transport on May 1, "2022" in paragraph 50 of the amended complaint is a typographical error.

4

(Am. Compl. ¶ 82). According to plaintiff, the facts of her arrest in this case "raise serious questions" about Walden and Sambells's ability properly to assess uses of force and suggests "at least some percentage of these prior reported incidents of force were not justified." (Id. ¶¶ 83–84).

**DISCUSSION**

I.     Standard of Review

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under "the two-pronged approach" articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).[3] First, a plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss. Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010). Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility." Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 556).

---

[3]     Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

II.      Monell Claim

Defendants argue plaintiff's Section 1983 claim against the City must be dismissed because plaintiff fails plausibly to allege the elements required by Monell v. Department of Social Services, 436 U.S. 658 (1978) ("Monell").

The Court agrees.

A.      Legal Standard

Pursuant to Monell, a municipality is liable under Section 1983 only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the [plaintiff's] injury." 436 U.S. at 694. Thus, to assert a Section 1983 claim against a municipality, a plaintiff must allege the existence of an official policy or custom causing injury and a direct causal connection between the policy or custom and deprivation of a constitutional right. Jones v. Town of East Haven, 691 F.3d 72, 80–81 (2d Cir. 2012).

A plaintiff may satisfy the "policy or custom" requirement by alleging one of the following: (i) "a formal policy officially endorsed by the municipality"; (ii) "actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question"; (iii) "a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware"; or (iv) "a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those

who come into contact with the municipal employees."  Brandon v. City of New York, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010).

Generally, to plead adequately an informal policy or custom, a plaintiff must allege more than one instance of a constitutional violation.  See DeCarlo v. Fry, 141 F.3d 56, 61 (2d Cir. 1988) ("[A] single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy.").  A plaintiff typically must also adequately plead similar incidents involving others.  See, e.g., Iacovangelo v. Corr. Med. Care, Inc., 624 F. App'x 10, 14 (2d Cir. 2015) (summary order) (affirming dismissal of a Monell claim and noting, "other than the plaintiff, the amended complaint provides only one additional example of a similar incident").  Nonetheless, a single incident may be sufficient to state a Monell claim "in a narrow range of circumstances," where the incident reflects deliberate indifference to "patently obvious" unconstitutional consequences.  Connick v. Thompson, 563 U.S. 51, 63–64 (2011).

"While Monell claims are not subject to a heightened pleading standard beyond that defined in Rule 8(a)(2), . . . boilerplate allegations will not suffice."  See Guzman v. United States, 2013 WL 5018553, at *3–4 (S.D.N.Y. Sept. 13, 2013).  "The allegations that [a defendant] acted pursuant to a 'policy,' without any facts suggesting the policy's existence, are plainly insufficient."  Missel v. County of Monroe, 351 F. App'x 543, 545 (2d Cir. 2009) (summary order).

B.   Analysis

Plaintiff alleges the City is liable under Monell for failing adequately to train and supervise its officers in the use of force and responses to "domestic disputes, including those

involving intoxicated individuals, or otherwise with respect to individuals who are intoxicated, emotionally disturbed or otherwise behaving in an impaired manner." (Am. Compl. ¶ 77).

Plaintiff has not pleaded sufficient facts to suggest the City has a policy or custom of inadequate training or supervision that caused her alleged injuries.

As the Supreme Court has cautioned, "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." Connick v. Thompson, 563 U.S. at 61. To state this type of Monell claim, plaintiff must allege facts permitting the reasonable inference that municipal policymakers chose to retain a policy or program despite having "actual or constructive notice" that a particular deficiency in training causes employees to violate constitutional dictates. Buari v. City of New York, 530 F. Supp. 3d 356, 399 (S.D.N.Y. 2021). Except in rare circumstances, actual or constructive notice requires "[a] pattern of similar constitutional violations." Greene v. City of New York, 742 F. App'x 532, 536–37 (2d Cir. 2018) (summary order).

Here, plaintiff alleges that in the twenty-eight months leading up to her arrest, Beacon officers reported using force during forty-four civilian encounters, seventeen of which "involved a subject who was either involved in a domestic dispute, intoxicated, emotionally disturbed and/or exhibiting symptoms of mental illness." (Am. Compl. ¶ 76).[4] As an initial matter, this statement tells the Court only that, on seventeen occasions, officers in Beacon used force in encounters with a particular subset of individuals. But the Fourth Amendment does not prohibit

---

[4] In their motion, defendants point out the amended complaint does not specify whether these forty-four incidents occurred in the City of Beacon specifically or the County of Dutchess generally. (Doc. #29 at 4 & n.1). In plaintiff's opposition, counsel clarifies and affirms that these allegations "were meant to refer to instances occurring in the City of Beacon." (Doc. #36 at 19 n.4). The Court accepts plaintiff's counsel's representation, and notes it is consistent with the surrounding allegations in the amended complaint. (See, e.g., Am. Compl. ¶¶ 81–82, 86).

police officers from using force during civilian encounters; it proscribes the use of <u>excessive</u> force.

Plaintiff claims "at least some percentage of these prior reported incidents of force were not justified." (Am. Compl. ¶ 84). However, this assertion is conclusory and speculative because it is not supported by any particularized facts. See <u>Cipolloni v. City of New York</u>, 758 F. App'x 76, 79–80 (2d Cir. 2018). Similarly, plaintiff contends in the ten years preceding her arrest "there have been at least seven lawsuits alleging claims of excessive force against City of Beacon police officers." (Am. Compl. ¶ 90). At best, the existence of these lawsuits suggests "other individuals have plausibly alleged that they have experienced similar violations of their constitutional rights," "not that those violations actually occurred." <u>Simms v. City of New York</u>, 480 F. App'x 627, 630 (2d Cir. 2012). And, in any event, plaintiff alleges these lawsuits involved excessive force claims generally—the amended complaint does not indicate whether these cases concerned excessive force used against individuals involved in "domestic disputes" or who were otherwise "impaired."

Moreover, even if the Court could infer a pattern of misconduct from the above facts (which it cannot), plaintiff has not plausibly alleged that the prior use of force incidents on which she relies involved sufficiently similar circumstances to her own.

Plaintiff repeatedly refers to the conduct of Beacon officers in instances involving "a subject who was either involved in a domestic dispute, intoxicated, emotionally disturbed and/or exhibiting symptoms of mental illness." (Am. Compl. ¶¶ 76, 78 (discussing police responses to "those exhibiting an impaired condition – whether by intoxication, mental illness, or the intensity of the situation")). But plaintiff paints with too broad a brush. She has alleged on the night in question, she was involved in a "domestic dispute," she was "intoxicated," and she was "upset."

9

(Am. Compl. ¶¶ 13–15, 31, 42).  There are no facts in the amended complaint suggesting plaintiff was "emotionally disturbed" or "exhibiting symptoms of mental illness."  Thus, plaintiff's allegations concerning police responses to individuals "impaired" by "mental illness" or emotional disturbance are immaterial to the analysis of her Monell claim.  See Greene v. City of New York, 742 F. App'x at 537 ("[T]he violations Greene cites are inapposite because they do not concern the nondisclosure of the same sort of evidence at issue in this case."); accord Jones v. City of New York, 988 F. Supp. 2d 305, 313 (E.D.N.Y. 2013).

Furthermore, plaintiff cannot rely on a "single-incident" theory of liability—that is, her arrest and detention alone do not imply a "patently obvious" need for specific training.  Connick v. Thompson, 563 U.S. at 64.  Regarding failure-to-train claims, "[c]ourts in this Circuit and others have found that the single-incident theory is available only when the evidence reflects a complete lack of any training or where the training is so inadequate that it amounts to a 'lack of training.'"  McCormick v. County of Westchester, 2023 WL 2632204, at *13 (S.D.N.Y. Mar. 24, 2023) (collecting cases).  For example, "failing to provide an armed police officer with any training about the constitutional limitations on the use of deadly force could constitute deliberate indifference" even without a pre-existing pattern of violations.  O'Brien v. Barrows, 556 F. App'x 2, 5 (2d Cir. 2014) (summary order).  Plaintiff has not alleged facts consistent with those rare circumstances that would support single-incident liability under Monell.

Insofar as plaintiff separately contends the City failed to supervise defendants Walden, Sambells, and Sellick, this theory is also insufficient to state a Monell claim.

First, plaintiff argues the City erred by allowing Walden and Sellick "to exercise supervisory authority to review other officers' use of force" even though these defendants were involved in prior use of force incidents and were defendants in prior excessive force lawsuits.

(Doc. #36 at 20).  As discussed above, without more, that these defendants were involved in prior uses of force and named in excessive force lawsuits does not permit the Court to reasonably infer Beacon policymakers had actual or constructive notice of a pattern of unconstitutional misconduct.

Second, plaintiff alleges Walden and Sambells, "acting in their supervisory capacities," reviewed several of the forty-four use of force reports discussed above.  Plaintiff argues these officers' conduct during her arrest "raise[s] serious questions" about their "abilities to properly and objectively assess other officers' uses of force and strongly suggests that their decisions clearing such instances were incorrect and improper."  (Am. Compl. ¶ 83).  According to plaintiff, these facts "also raise[] serious questions as to the adequacy" of the City's training and supervision of officers.  (Id. ¶ 85).  But plaintiff has not adequately tied this alleged supervisory deficiency to her own purported injuries.  Drawing all inferences in plaintiff's favor, she appears to assert that Beacon's allowing Walden and Sambells to review other officers' uses of force, in light of their conduct on the night in question, suggests the City has an inadequate supervisory program.  Even accepting plaintiff's theory, however, the Court cannot fill in the gaps to articulate how the City's permitting these defendants to review other uses of force contributed to their alleged use of excessive force against plaintiff.  Thus, plaintiff has not stated a claim based on these facts.  See Jones v. Town of East Haven, 691 F.3d at 80–81 ("The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged.").

III.   Leave to Amend

In her opposition to the motion, plaintiff requests leave to file a second amended complaint in the event the Court concludes she has not stated a Monell claim.  (Doc. #36 at 21–

11

22).  In particular, plaintiff argues she has acted in good faith and should be afforded an opportunity to address any deficiencies the Court identifies in her pleadings.  Rule 15(a)(2) instructs courts to "freely give leave" to amend "when justice so requires."  However, plaintiff has already amended her complaint in response to substantially identical arguments defendants previously raised in a motion to dismiss.  (See Doc. #22).  Moreover, plaintiff has not specified "how amendment would cure the pleading deficiencies in [her] complaint."  TechnoMarine SA v. Giftports, Inc., 758 F.3d 493, 505 (2d Cir. 2014); see also Golla v. Neovasc, Inc., 2023 WL 2469770, at *3 (2d Cir. Mar. 13, 2023) (summary order).

Accordingly, leave to amend a second time is denied.

## CONCLUSION

Defendants' motion to dismiss plaintiff's Monell claim against the City of Beacon is GRANTED.  All of plaintiff's other claims shall proceed.

Plaintiff's request for leave to file a second amended complaint is DENIED.

The Clerk is instructed to terminate the City of Beacon as a defendant on the docket, and terminate the motion.  (Doc. #27).

By March 25, 2024, defendants Walden, Sambells, and Sellick shall file an answer to the amended complaint.

By separate Order, the Court will schedule an initial conference.

Dated: March 11, 2024
      White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge